FILED '06 DEC 15 13:24USDC-ORE

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

CHRISTOPHER L. CARSON,                    Civ No. 05-1951-AA

           Plaintiff,                     OPINION AND ORDER

      v.

FEDEX GROUND PACKAGE
SYSTEM, INC., a foreign
business corporation,

           Defendant.
_____

Michael D. Callahan
Sharon Stevens
Callahan & Stevens
5845 Shoreview Lane N, Suite 500
P.O. Box 20937
Keizer, Oregon 97307-0937
     Attorneys for plaintiff

Michael A. Griffin
Karen P. Kruse
Jackson Lewis LLP
One Union Square
600 University Street, Suite 2900
Seattle, Washington 98101
     Attorneys for defendant

1 - OPINION AND ORDER

AIKEN, Judge:

Plaintiff filed suit alleging multiple claims after defendant terminated plaintiff as a package handler at its Portland hub. Specifically, plaintiff alleges unlawful discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12117, and its state counterpart, Oregon Revised Statute § 659A.100 *et seq.*; unlawful termination on the basis of injured worker status in violation of Or. Rev. Stat. § 659A.040; failure to reinstate in violation of Or. Rev. Stat. § 659A.043; and failure to re-employ in violation of Or. Rev. Stat. § 659A.046. Defendant moves for summary judgement on each of plaintiff's claims. Defendant's motion is granted.

## I. BACKGROUND

Plaintiff worked for defendant on two different occasions. The first period of employment lasted from October 2003 until March 2004. Plaintiff was terminated from that position for excessive absenteeism and tardiness. On March 9, 2005, defendant again hired plaintiff part-time as a package handler. On May 8, 2005, plaintiff was terminated once again, this time by an automated computer system that terminates employees who have no payroll activity for at least two weeks. Plaintiff's claims arise out of issues relating only to his employment with defendant in 2005.

Plaintiff's job as a package handler required him to lift and sort packages of various sizes. On Monday, March 28, 2005, plaintiff strained his back while lifting a package and was forced

2 - OPINION AND ORDER

to leave work.  Plaintiff attempted to return to work the next day, March 29, 2005, but was unable to do so.  At that time, plaintiff made arrangements with his supervisor to be gone for the remainder of that week, expecting to return to work the following Monday, April 4, 2005.  The supervisor marked plaintiff as "not scheduled" in the payroll system, thereby excusing his absence. Plaintiff then visited a physician, Dr. Samuel Tse, and also filed a workers' compensation claim.

On April 4, 2005, plaintiff worked part of the day, but he left early because of his back pain.  He did not work on April 5, 2005, and he submitted a note from Dr. Tse excusing him from work that day.  On April 6, 2005,  Dr. Tse imposed restrictions limiting plaintiff from lifting more than 25 pounds for a period of two weeks.  Plaintiff worked at least partial days on April 6 and 7, 2005.  However, the pain became too great and plaintiff again visited Dr. Tse, who issued a work release for Friday, April 8, 2005 because of back pain.  Plaintiff also made arrangements with his supervisor to miss work on April 8 and to remain absent from work the entire following week, April 11 through April 15, 2005. The supervisor marked plaintiff as "not scheduled" in the payroll system during that time.

On April 7, 2005, the last day plaintiff worked for defendant, he moved to Philomath, a town roughly one-and-a-half to two hours from Portland.  Plaintiff had no further contact or communication with his supervisor.

3 - OPINION AND ORDER

On April 11, 2005, plaintiff spoke with defendant's Employee Relations Manager ("ERM").  Plaintiff informed the ERM that he was taking time off to rest his back and that he had another, non-occupational medical condition that would keep him out of work until May.  However, plaintiff did not disclose the nature of his medical condition to the ERM at that time.  The ERM encouraged plaintiff to seek coverage under the Oregon Family Medical Leave Act (OFMLA) or the company's short-term disability benefits so that his non-occupational medical leave would be excused.

On April 15, 2005, plaintiff visited Dr. Tse and received a return-to-work order indicating that his back had healed and that he would be able to fully resume his job the following Monday, April 18, 2005.  Plaintiff faxed this statement to defendant's ERM but did not discuss it with her.

Also on April 15, 2005, plaintiff visited a health center at Oregon Heath Sciences University.  Plaintiff met with a nurse practitioner and reported feeling "severely depressed" due to "situational issues."  Plaintiff received a work release form excusing him from work until May 2, 2005, at which time he would be re-evaluated ("April 15th Release").  The release did not specify the medical reason for plaintiff's need to be absent from work.

On or just prior to April 18, 2005, plaintiff left a voicemail with the ERM informing her of the April 15th Release and mentioned that it was related to his depression.  On April 20, 2005, plaintiff faxed the release to the ERM.  On April 23, 2005,

plaintiff's primary care provider, physician's assistant Emily Jacobson, faxed the ERM another release form excusing plaintiff from work until June 1, 2005 ("April 23rd Release").  The April 23rd Release did not specify the medical reason for plaintiff's need to be absent from work, although it stated that the release was unrelated to his back injury.

Beginning on April 18, 2005, defendant's computer payroll system regarded plaintiff's absence from work as un-excused.  As of that date, plaintiff had been cleared to return to work following his back injury.  Further, plaintiff's absence was not covered under OFMLA because he had not worked 1250 hours in a twelve-month period.  Affidavit of Michael A. Griffin (Griffin Aff.), Ex. 132. Finally, plaintiff did not qualify for defendant's short-term disability benefits because he was not a salaried employee. Griffin Aff., Ex. 133.

Plaintiff's un-excused status continued for three weeks, and on May 8, 2005, defendant's payroll system automatically terminated plaintiff through its "autoscrub" feature. The "autoscrub" feature terminates any employee who has at least two consecutive weeks without payroll activity, which includes time worked, time marked as "not scheduled," and any excused absences.  Such terminations are automatically back-dated to the last day of the pay period that the employee worked or had other payroll activity.  In this case, plaintiff's termination was back-dated to April 15, 2005, the last day of the pay period in which plaintiff had payroll activity.

On May 9, 2005, defendant's ERM learned of defendant's autoscrub termination. After determining that plaintiff's workers' compensation leave had ended on April 15, 2005 and that plaintiff was not eligible for another type of leave, the ERM allowed the autoscrub termination to stand.

On May 10, 2005, the ERM notified plaintiff of the autoscrub termination by telephone. The next day, plaintiff arrived at the office and requested a copy of his personnel file.

On June 22, 2005, plaintiff filled out an employment application with Safeway. Plaintiff was ultimately hired and began working for Safeway in September of 2005.

On December 28, 2005, plaintiff filed this action.

## II. SUMMARY JUDGMENT STANDARDS

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The materiality of a fact is determined by the substantive law on the issue. T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n., 809 F.2d 626, 630 (9th Cir. 1987). The authenticity of a dispute is determined by whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for trial. Id. at 324.

Special rules of construction apply to evaluating summary judgment motions: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

III. DISCUSSION

Plaintiff brings multiple claims related to his employment and termination with defendant.  The first four claims allege disability discrimination and retaliation based on his depression. The final three claims allege unlawful employment practices relating to his back injury and workers' compensation claim.

A.   Plaintiff's Discrimination Claims

Plaintiff alleges disability discrimination under the ADA and Oregon Revised Statutes.  Under the ADA, "No covered entity shall discriminate against a qualified individual with a disability because of the disability of such individual in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms,

conditions, and privileges of employment." 42 U.S.C. § 12112(a).
Such discrimination includes the failure to reasonably accommodate
"the known physical or mental limitations of an otherwise qualified
individual." Id. § 12112(b)(5)(A). To prevail on a claim of
unlawful discharge under the ADA, plaintiff must establish that:
1) he is disabled; 2) he is qualified and able to perform, with or
without reasonable accommodation, the essential functions of the
job; and 3) his employer's decision was based on his disability.
Kennedy v. Applause, Inc., 90 F.3d 1477, 1481 (9th Cir. 1996)
(quoting White v. York Int'l Corp., 45 F.3d 357, 360-61 (10th Cir.
1995)). "The standard for establishing a prima facie case of
discrimination under Oregon law is identical to that used in
federal law." Snead v. Metropolitan Property & Cas. Ins. Co., 237
F.3d 1080, 1087 (9th Cir. 2001).

Plaintiff asserts that defendant unlawfully discriminated
against him by failing to provide him with a reasonable
accommodation and by terminating him because of his disability.
Defendant moves for summary judgment based on its arguments that:
1) plaintiff is not disabled; 2) even if plaintiff is disabled, no
reasonable accommodation was available to plaintiff; and 3)
plaintiff's alleged disability was not the cause of his
termination.

Plaintiff must first demonstrate that he is disabled within
the meaning of the ADA. The ADA defines disability as "(A) a
physical or mental impairment that substantially limits one or more

of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. § 12102(2). The Ninth Circuit held these definitions to be disjunctive; thus, an individual may prove disability under any one of the three definitions. <u>Summers v. Teichert & Son, Inc.</u>, 127 F.3d 1150, 1153 (9th Cir. 1997). Plaintiff originally alleged disability under each definition; in response to defendant's motion for summary judgement, plaintiff concedes that he did not have a record of disability and that he was not regarded as having such an impairment. Therefore, plaintiff maintains that he had an actual disability due to his depression, and plaintiff must show that his impairment substantially limited one or more major life activities.

An individual is substantially limited in a major life activity if the person is "unable to perform a major life activity that the average person in the general population can perform" or is "significantly restricted as to the condition manner or duration under which an individual can perform a particular major life activity as compared to the condition, manner or duration under which the average person in the general population can perform the same major life activity." 29 C.F.R. § 1630.2(j)(1)(i),(ii). Major life activities are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working." <u>Id.</u> § 1630.2(i). In determining whether a major life function is substantially

impaired, the following factors must be considered: "(i) [t]he nature and severity of the impairment; (ii) [t]he duration or expected duration of the impairment; and (iii) [t]he permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment." Id. § 1630.2(j)(2).

Defendant argues that plaintiff was not disabled because, during the time of his employment, plaintiff's depression was temporary and situational rather than chronic or long-term. In response, plaintiff provides some evidence that he has experienced depression since childhood and that he underwent treatment for depression before, during, and after his employment with defendant. See e.g. Affidavit Of Michael D. Callahan (Callahan Aff.), Ex. 1, p. 4. Although the bulk of plaintiff's evidence post-dates his termination, taking the remainder of the evidence in a light most favorable to plaintiff, I cannot agree with defendant that plaintiff has failed to establish a genuine issue for trial. Plaintiff provides deposition testimony from a physician's assistant and an affidavit from a psychologist who identify plaintiff's depression as a long-term condition. Reasonable members of a jury could rely on that information and find plaintiff's depression was an actual disability. Therefore, this issue cannot be decided on summary judgment.

Even if plaintiff can demonstrate that he had a disability, he must also show that he was a qualified individual able to perform his job with or without reasonable accommodation.

10 - OPINION AND ORDER

Defendant argues that plaintiff's continued absence from work was not a reasonable accommodation, because plaintiff provided no indication that he would ever return to work and be able to perform the essential functions of his job.  Defendant emphasizes that plaintiff's work releases kept extending his absence and that plaintiff's own statements indicated he was not sure exactly when he would return to work.

Plaintiff responds by citing Kimbro v. Atlantic Richfield Co., 889 F.2d 869 (9th Cir. 1989), to support his assertions that 1) his request for leave from work constitutes a request for a reasonable accommodation, and 2) leaves of absence are always reasonable accommodations.[1]  I find the facts in Kimbro distinguishable from those in this case.

The plaintiff in Kimbro suffered from migraine headaches and periodically missed work as a result.  Id. at 872.  Over a period of five years, the plaintiff would miss work for a few days to a few weeks at a time, but then he would return to work for long periods while his migraines were in remission.  Id.  When the plaintiff missed work again because his migraines returned, he was terminated.  Id.  The court held that the employer should have granted a leave of absence because, based on the plaintiff's

_____

[1]In Kimbro, the plaintiff brought claims under Washington state law rather than the ADA.  However, the Ninth Circuit relied on Prewitt v. United States Postal Service, 662 F.2d 292, 310 (5th Cir. 1981), a case interpreting the Rehabilitation Act of 1973, to decide that case.  The ADA defines a disability in substantially the same terms as the Rehabilitation Act.  Collings v. Longview Fibre Co., 63 F.3d 828, 832 n.3 (9th Cir. 1995).

11 - OPINION AND ORDER

history with the employer, there were "plausible reasons" to believe that the absence would in fact accommodate the disability as absences had done in the past. Id. at 878-879. Thus, while leave from work *may be* an appropriate accommodation for a disability under the ADA, the plaintiff must show that the request for leave will likely allow the employee to perform the essential functions of his job. See also Humphrey v. Memorial Hospitals Ass'n, 239 F.3d 1128, 1136 (9th Cir. 2001) (relying on Kimbro and holding "statements in [a doctor's] letter that [employee's] condition was treatable . . . are sufficient to satisfy the minimal requirement that a leave of absence could plausibly have enabled [employee] adequately to perform her job.").

Here, plaintiff failed to provide defendant with plausible reasons that an extended absence from work would allow him to return to work and perform the essential functions of his job. Unlike the plaintiff in Kimbro, plaintiff's employment with defendant did not include a history whereby plaintiff suffered bouts of depression, missed work because of that depression, and then returned to work for long periods of time while the depression was in remission. Kimbro, 889 F.2d at 878. To the contrary, plaintiff had worked only three weeks on a part-time basis and did not communicate with defendant about his depression like the plaintiff in Kimbro communicated to his employer about his migraines. Additionally, plaintiff did not seek any accommodation for depression during his previous six-month employment with

defendant that began in 2003. Moreover, unlike the plaintiff in Humphrey, plaintiff did not provide defendant with indication from a physician regarding the nature of his symptoms, that they were treatable, and that his absence would allow him to return to work to adequately perform his job. Humphrey, 239 F.3d at 1136.

Instead, plaintiff's April 15th Release merely stated that he would be absent from work until May 2, 2005 and that he would be re-evaluated at that time. The release did not explain the reasons plaintiff required a leave from work, or describe any resulting limitations on plaintiff's ability to work. The subsequent work April 23rd Release extended plaintiff's leave until June 1, 2005 but did not explain why plaintiff needed the leave, how the leave would enable him to return to work, or that he would actually return to work on June 1, 2005. In fact, plaintiff testified that he would not have been capable of returning to work until sometime in October 2005. Griffin Aff., Ex. 101 (p. 151 of deposition testimony).[2] Because plaintiff fails to go beyond the pleadings to establish a reasonable accommodation that would allow him to perform the essential functions of the job, or to establish that an extended absence plausibly would have accommodated his alleged

---

[2]Although irrelevant to his status as a qualified individual or the reasonableness of the requested accommodation, I note that plaintiff does not respond to defendant's assertion that he had no intention of performing the essential functions of his job. Plaintiff testified that, since he moved Philomath on April 7, 2005, prior to his depression-related leave, employment in Portland is not feasible for him. See Griffin Aff., Ex. 101 (pp. 191-193 of deposition testimony).

disability, plaintiff has failed to establish that he is a
qualified individual under the ADA or that defendant failed to
provide a reasonable accommodation.

Plaintiff nonethess argues that defendant was under an
obligation to initiate an interactive process with plaintiff to
determine an appropriate accommodation.  This argument fails.  In
Brown v. Lucky Stores, Inc., 246 F.3d 1182 (2001), the Ninth
Circuit held that an employer is under an obligation to initiate an
interactive process "only when 'an employee is unable to make such
a request [for accommodation]' and 'the company knows of the
existence of the employee's disability.'"  Id. at 1188 (quoting
Barnett v. U.S. Air, Inc., 228 F.3d 1105, 1114 (9th Cir. 2000)).
Plaintiff offers no evidence that he was unable to make a request
for accommodation.  Further, plaintiff provides no evidence that
defendant recognized that his depression was disabling and required
accommodation.[3]  Rather, on or around April 11, 2005, before he
obtained a release form, plaintiff simply notified defendant that
he was going to take additional time off work.  Plaintiff mentioned
that his need for leave was because of an unspecified medical issue
and did not indicate that it was related to depression until he
received the April 15th Release.  Based on the lack of information
provided by plaintiff, defendant was not obligated to initiate the
interactive process.  See Brown v. Verizon Directories Sales Corp.,

_____

[3]See Griffin Aff., Ex. 101 (p. 119 of plaintiff's deposition
testimony)("I said I was suffering from depression.  I didn't say
it was a disability.")

2004 WL 1315845 at *3 (D. Or. March 31, 2004) ("Simply stating that an employee is depressed does not provide an employer with enough information for an employer to understand that an employee requests an accommodation.").

Because plaintiff fails to establish that an extended leave of absence was a reasonable accommodation, plaintiff fails to create a triable issue regarding his status as a qualified individual under the ADA. Therefore, plaintiff's claims of disability discrimination must fail.

B.   Plaintiff's Retaliation Claims

Plaintiff also asserts that defendant unlawfully retaliated against him by terminating him when he requested an accommodation for his alleged disability. "To establish a prima facie case of retaliation under the ADA, an employee must show that: (1) he or she engaged in a protected activity; (2) suffered an adverse employment action; and (3) there was a causal link between the two." Pardi v. Kaiser Foundation Hospitals, 389 F.3d 840, 849 (9th Cir. 2004) (citing Brown v. City of Tucson, 336 F.3d 1181, 1186-87 (9th Cir. 2003)). If the employee establishes a prima facie case of retaliation, the employer may offer legitimate reasons for the adverse employment action, shifting the burden back to the employee "to demonstrate a triable issue of fact as to whether such reasons are pretextual." Pardi 389 F.3d at 849 (citing Brooks v. City of San Mateo, 229 F.3d 917, 928 (9th Cir. 2000)). As with plaintiff's discrimination claims, the standards applicable to plaintiff's

state law retaliation claims are the same as those applied under
the ADA.  See Head v. Glacier Northwest, 413 F.3d 1053, 1063 (9th
Cir. 2005).    I find that plaintiff presents no evidence that
defendant terminated him because he sought an extended medical
leave.

Plaintiff argues that because he was a qualified individual
with a disability, his request for accommodation is the protected
activity in which he engaged.  A qualified individual seeking
accommodation under the ADA is protected from unlawful retaliation.
See e.g., Pardi, 389 F.3d at 850.  For the reasons discussed above,
plaintiff fails to establish that he is qualified under the ADA.
Furthermore, plaintiff's argument that his work release constituted
a request for accommodation fails because he offers no specific
evidence that, in his situation, an extended absence from work
would have accommodated his alleged disability.

Even if plaintiff could show that he requested a reasonable
accommodation, or that his work release served as such a request,
he must demonstrate a causal link between the request for
accommodation and his termination, the adverse employment action.
Plaintiff offers five examples of defendant's "animus" as evidence
that his termination was motivated by his request for an extended
leave of absence.

First, plaintiff asserts that defendant's "autoscrub" payroll
system is per se discriminatory.  Plaintiff argues that defendant's
"autoscrub" system guarantees adverse employment action against

anyone who suffers from disabilities and work injuries.  To survive summary judgment, it is not enough for plaintiff to make such a statement without going "beyond the pleadings" and providing evidence to support that statement.  Celotex Corp., 477 U.S. at 324.  In contrast, defendant provides affidavits and deposition testimony of employees familiar with the payroll system to support its contention that the "autoscrub" system does not automatically terminate protected employees.  Having failed to produce any evidence to the contrary, plaintiff fails to raise a triable issue related to how the system creates any animus based on his request for a leave of absence.

Second, plaintiff asserts that a contentious interaction he had with a supervisor illustrates defendant's animosity toward his request for a leave of absence.  Around April 6 or 7, 2005, plaintiff returned to work even though he continued to experience back pain.  Plaintiff was under his doctor's orders to limit lifting to twenty-five pounds or less.  When plaintiff complained of back pain, his supervisor moved him to a different area where the packages were lighter.  Plaintiff reported that he was still experiencing pain, and his supervisor moved him back to his original position lifting heavier packages.  It is undisputed, however, that both positions fell within the lifting restrictions imposed by plaintiff's doctor.

Notably, this interaction occurred prior to the time plaintiff received the April 15th Release form from the nurse practitioner.

It also occurred prior to the time he first mentioned his depression to defendant's ERM, the only employee with whom he discussed his depression-related leave from work. Plaintiff presents no evidence that his supervisor and the ERM discussed his requested leave. Therefore, I find that the subject matter and the timing of the interaction plaintiff had with his supervisor render it irrelevant for purposes of determining animus toward plaintiff's request for the extended leave of absence.

Third, plaintiff contends that defendant's ERM accused him of altering the April 23rd Release when she asked for another copy directly from the clinic that issued it. Defendant argues that the request was legitimate and non-discriminatory, because the form appeared altered, and defendant was merely exercising its right to request medical substantiation of an employee's request for leave. Plaintiff acknowledged in his deposition that the release form did look altered and he understood why the ERM asked for another copy. Griffin Aff., Ex. 101 (p. 114 of deposition testimony). In fact, the release form had been altered by a clinic employee and the clinic was able to provide defendant with a different, unaltered copy. Callahan Aff., Ex. 1, p. 7. Plaintiff fails to provide any evidence to establish that defendant's reason for requesting the new work release was pretextual. Plaintiff therefore fails to raise a triable issue that this interaction was indicative of animus toward his request for an extended leave of absence.

Fourth, plaintiff refers to defendant's refusal to identify

other work that he was capable of doing *when he hurt his back* as evidence of animus toward his request for an extended leave of absence. Similar to plaintiff's previous argument relating to the contentious interaction with his supervisor, this argument fails because it relates to plaintiff's back injury and predates his request for the depression-related leave of absence. Even if plaintiff could prove that defendant did not provide him with different work when he injured his back, such evidence is irrelevant to his claim of animus based on his request for an extended leave of absence.

Finally, plaintiff cites defendant's refusal to overturn the "autoscrub" termination as evidence of animus. However, defendant provides a legitimate, non-discriminatory reason for not overturning the termination. Defendant's ERM reviewed the termination, believing plaintiff might have qualified for short term disability or OFMLA benefits. Upon discovering that was not the case, and that plaintiff's absences were not otherwise excused, the manager allowed the termination to stand pursuant to defendant's attendance policy. Plaintiff provides no evidence that this reason for allowing the termination to stand is pretextual. I therefore find that plaintiff fails to establish a triable issue of animus toward his request for an extended leave of absence.

Because plaintiff fails to establish genuine issues of material fact for the elements of his retaliation claims, these claims cannot survive defendant's motion for summary judgment.

C.    Plaintiff's Workers' Compensation Claims Under State Law

In addition to his claims of disability discrimination, plaintiff also argues that his termination was improper under Oregon state law. Specifically, plaintiff asserts that defendant terminated him on the basis of his injured worker status, a violation of Or. Rev. Stat. § 659A.040, and that defendant unlawfully failed to reinstate or re-employ him in violation of Or. Rev. Stat. § 659A.043 and 659A.046.

1.    Termination Based on Injured Worker Status

To prove unlawful termination based on injured worker status, plaintiff must prove: 1) he invoked the workers' compensation system; 2) he experienced an adverse employment action; and 3) a causal link between the two. See Williams v. Freightliner, LLC, 196 Or. App. 83, 90, 100 P.3d 1117 (2004). Only the third element, the causal link, is at issue here.

Plaintiff first argues that the conduct of his supervisor evidences an animus over his work injury, and that such animus is sufficient to show the causal connection between his invocation of the workers' compensation system and his termination. I disagree.

As discussed above, following plaintiff's back injury and the filing of his workers' compensation claim, plaintiff and his supervisor had a contentious interaction. Nonetheless, plaintiff's supervisor allowed plaintiff to miss work so that his injury could heal, and the supervisor marked plaintiff as "not scheduled" in the payroll system. Plaintiff acknowledges that after this time he had

no further interaction with his supervisor. Griffin Aff., Ex. 101 (p. 10 of deposition testimony).

Even if plaintiff's interaction with his supervisor suggests animus directed at plaintiff, it does not create a causal connection between filing his workers' compensation claim and his termination. It is undisputed that the termination was initiated by a computer system and that only the ERM exercised discretion in whether or not to allow the termination to stand. It is also undisputed that plaintiff's supervisor had no input into the decision to terminate plaintiff, and plaintiff cites no evidence that the supervisor had any impact on the ERM's decision to allow the termination to stand.

Plaintiff next argues that the actions of defendant's ERM constitutes animus sufficient to show a causal connection between his workers' compensation claim and his termination. Plaintiff specifically asserts that the ERM knew he was on protected workers' compensation leave on May 4, 2005, but that she allowed the "autoscrub" to stand anyway when it occurred shortly thereafter on May 8, 2005.[4] However, it is undisputed that plaintiff's back injury had healed and that he was fully released to work as of April 18, 2005. Plaintiff's Response To Defendant's Concise Statement Of Facts (doc. 21) (accepting defendant's LR 56.1

_____

[4]Plaintiff relies on the deposition testimony of defendant's ERM that plaintiff was on leave "strictly related to workers' comp." Callahan Aff., Ex. 4, p. 28. However, he ERM's testimony referred to plaintiff's status in the payroll computer system and not plaintiff's leave status.

21 - OPINION AND ORDER

Statement that "[p]laintiff was fully released to work as of April 18."). Thus, it is undisputed that plaintiff was not on protected workers' compensation leave on May 4, 2005. Plaintiff cites no other evidence that the ERM's decision was motivated even in part by his workers' compensation claim.

In sum, plaintiff presents no evidence to support a causal connection between his filing of a workers' compensation claim and his termination, and this claim fails.

2.  Failure to Reinstate and Failure to Re-Employ

Under Oregon law, a worker who has sustained a compensable injury may be entitled to reinstatement to his former position or re-employment to a different position. Reinstatement occurs where the employee is not disabled from performing the duties of the former position. Or. Rev. Stat. § 659A.043(1). Re-employment occurs where the employee is disabled from performing the duties of the former position, but where another position is available and suitable to the employee. Or. Rev. Stat. § 659A.046(1). The statutes and the implementing rules require the employee to make a timely demand on the employer for reinstatement or re-employment. Or. Admin. R. 839-006-0130(d) and 839-006-0135(b).

In his response brief, plaintiff admits he did not demand reinstatement or re-employment. Instead, plaintiff relies on Or. Admin. R. 839-006-0130(7) and 839-006-0135(10), both of which deem the worker to have made timely demand if "the employer has made it known" that reinstatement or re-employment will not be considered.

Plaintiff fails to go beyond the pleadings to show any evidence that defendant "made it known" to him that it would not consider either reinstating or re-employing him.  In contrast, defendant provides affidavits and deposition testimony that his position was open to him for three weeks following the April 15, 2005 return to work release.

Plaintiff responds that he was unable to return to work during that time because of his depression.  Plaintiff cites no authority stating that his alleged inability to return to work equates to defendant's "making it known" it would not consider reinstating or re-employing him.  Thus, plaintiff's failure to timely demand reinstatement or re-employment prevents these claims from surviving defendant's motion for summary judgment.

IV. CONCLUSION

For the reasons given above, defendants' Motion for Summary Judgment (doc. 15) is GRANTED.  This case is dismissed and all pending motions are denied as moot.

IT IS SO ORDERED.

Dated this /5 day of December 2006.

Ann Aiken<br>
United States District Judge

23 - OPINION AND ORDER